IN THE UNITED STATED DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEPHEN D. KELLY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 23-CV-73-JAR |
| OLETA M. MABRAY and NICK MABRAY, | ) ) ) ) |
| Defendants. | ) ) |

### COMPLAINT

Plaintiff, Stephen D. Kelly, hereby submits his Complaint and causes of action against Defendants, Oleta Mabray and Nick Mabray. In support, Plaintiff states the following:

PARTIES AND JURISDICTION

1. Plaintiff, Stephen D. Kelly ("Kelly") is a citizen of the State of Missouri.

2. Defendant Oleta M. Mabray is a citizen of Oklahoma and upon information and belief resides at 20377 E. Murrel Rd., Tahlequah, Oklahoma.

3. Defendant Nick Mabray is a citizen of Oklahoma and upon information and belief resides at 20377 E. Murrel Rd., Tahlequah, Oklahoma with his mother, Oleta M Mabray. Oleta and Nick Mabray will be collectively referred to as "Defendants" unless otherwise stated.

4. At all material times herein, Nick Mabray was acting as the agent and in conspiracy with Oleta Mabray with express and/or implied authority, with respect to all dealings with Kelly as set forth herein.

5. Jurisdiction is proper in this Court pursuant 28 U.S.C. § 1331 (Federal Question) based on Kelly's cause of action under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.SC. § 1964(c). This Court further has jurisdiction of Kelly's state-law causes

of action pursuant to its supplemental jurisdiction under 28 U.S.C. § 1467 and diversity jurisdiction under 28 U.S.C. § 1332.

ALLEGATIONS APPLICABLE TO ALL COUNTS

6.  Defendants published, or caused to be published, an advertisement on Facebook (the "Facebook Ad") wherein they represented they had cattle for sale. The Facebook Ad read:

> 46 true Brangus and Brangus Super Baldies. There are six calves on them as of 11-16-22 calves weigh up to 225 pounds balance of cows are in there (sic) 3rd stage calving to Sim Angus bulls. Cows are 3 to 6 years old and very fancy deep ribbed long bodied cows. All are second and third calf Cows. Cows are very gentle and will follow a feed truck anywhere you want to go. Located in Tahlequah, Oklahoma. Trucking also available. Message me for further information.

7.  Kelly owns and operates a farm in Arcadia, Kansas (the "Kelly Ranch").

8.  In October and November, 2022, Kelly began searching for cattle to purchase to raise on the Kelly Ranch for breeding and eventual re-sale.

9.  Kelly discovered the Facebook Ad and sent a message in response seeking more information about the cattle referenced therein.

10. In response to Kelly's inquiry about the Facebook Ad, Nick Mabray contacted Kelly. Over the course of several telephone conversations, Nick Mabray represented to Kelly, among other things that:

   a. He and his family were long-time, well-established cattle ranchers in Oklahoma and Arkansas with 3,000 to 4,000 head of first calf heifers each year, some of which included tiger-striped cattle, a highly specialized breed of cattle;

   b. The cattle described in the Facebook Ad were as advertised, and were in excellent physical condition;

   c. In addition to the cattle referenced in the Facebook Ad, Defendants had other high quality cattle for sale including 74 Angus and Angus-cross pairs (cow and calf

pairs), 88 first stage pregnancy Angus and Angus-cross cows, and 220 Angus and Angus-cross bred cows, all of which were in excellent condition;

      d.      All of the cattle for sale were being fed and pastured on the Mabray family ranch in Tahlequah, Oklahoma and all cattle to be shipped to Kelly would come from the Mabray family ranch;

      e.      All Cattle were checked by a veterinarian to verify their age, had ultrasounds to verify pregnancy, all had good udders, and were pelvic checked for good tracks with no cysts;

      f.      40% of the Cattle would be 3 year-olds, 40% would be 4 year-olds, and 20% would be 5-6 year-olds; and

      g.      Defendants would deliver any purchased cattle by truck to the Kelly Ranch in the same condition represented by Defendants in the Facebook Ad and subsequent conversations.

      11.      Kelly relied on Defendants' representations when he agreed to purchase 74 Angus and Angus-cross pairs (cow and calf pairs) for the sum of $114,700.00 ("74 Angus-cross pairs") ; 88 first stage pregnancy Angus and Angus-cross cows for the sum of $101,200.00 ("88 first stage"); and 220 Angus and Angus-cross bred cows for the sum of $275,000.00 ("220 Angus-cross bred") (collectively "Cattle").

      12.      Defendants agreed to transport the Cattle to the Kelly Ranch for the additional sum of $11,950.00, which Kelly agreed to pay.

      13.      On November 28, 2022, Oleta Mabray emailed Kelly an Invoice for the Cattle as well as instructions for Kelly to use in completing a wire transfer to her in the amount of $502,850.00 for the purchase price of the Cattle and the delivery charge.

SPR 18127807.1

14. Thereafter, on the afternoon of November 28, 2022, relying on Defendants' representations, Kelly caused the sum of $502,850.00 to be transferred from his bank account to an account owned by Oleta Mabray at BancFirst in Tahlequah, Oklahoma.

15. Nick Mabray subsequently confirmed to Kelly that the wire transfer in the amount of $502,850.00 had been received by Oleta, and that the Cattle were in the process of being loaded for delivery to the Kelly Ranch.

16. On December 7, 2022, a truck carrying 88 head of cattle arrived at the Kelly Ranch and were offloaded by the driver (the "First Shipment"). The First Shipment consisted of Heavy Bred cattle (7 to 9 months bred).

17. On December 8, 2022, a truck carrying 74 cows and 73 calves arrived at the Kelly Ranch and were offloaded by the driver (the "Second Shipment"). Despite the representations of pairs, six of the 74 cows were without calves, and there were six orphan calves.

18. On December 9, 2022, a truck carrying 88 head of cattle arrived at the Kelly Ranch and were offloaded by the driver (the "Third Shipment"). These were first stage (up to three months bred), with one of the cows delivered dead.

19. On or about December 9, 2022, upon inspection of the first three Shipments, Kelly notified Defendants verbally and by text message the Cattle were not acceptable and that no further deliveries would be accepted unless approved by Kelly at the point of loading.

20. In response to Kelly's verbal and text December 9, 2022, rejection, Nick Mabray told Kelly that Kelly must either receive the delivery or the Cattle would be dropped off at the closest sale barn and Kelly "can take your loss there."

21. Despite Kelly's notice of rejection, Defendants continued to deliver cattle that did not meet Defendants' representations.

SPR 18127807.1

22. On December 13, 2022, a truck carrying 88 head of cattle arrived at the Kelly Ranch and were offloaded by the driver (the "Fourth Shipment"). These were Heavy Bred (7 to 9 months bred).

23. On December 14, 2022, a truck carrying 44 head of cattle arrived at the Kelly Ranch and were offloaded by the driver (the "Fifth Shipment"). These were also Heavy Bred (7 to 9 months bred).

24. Upon inspection, Kelly learned many of the delivered Cattle were malnourished and/or sick, were not "pairs," were not the Cattle Defendants verbally represented and described in the Facebook Ad, stifled walkers, and/or crippled with bad feet. Further, Kelly's inspection revealed that several of the Cattle delivered were not cattle cared for and fed on the Mabray family cattle ranch, as represented. Instead, several head of Cattle were recently purchased from a third-party.

25. As of December 30, 2022, 46 cows, 18 calves, and all 6 orphan calves had died.

26. On December 19, 2022, Kelly issued a second notice to Oleta Mabray (this time in writing) that all Cattle delivered were non-conforming, and were rejected (the "Written Rejection Notice").

27. In the Rejection Notice, Kelly demanded a refund of $502,850.00, and that Defendants remove the Cattle delivered from the Kelly Ranch immediately.

28. Defendants have thus far ignored Kelly's Written Rejection Notice, Kelly's demand that his funds be returned, and Kelly's demand that the Cattle delivered be removed from the Kelly Ranch.

29. To date, Defendants have refused to deliver a Bill of Sale for the Cattle or even provide a federal tax identification number required for tax reporting.

30. On or about January 9 and 13, 2023, Plaintiff had each of the delivered Cattle examined by a veterinarian. The veterinarian reported the following findings:

    a. 30 of the 382 head of Cattle were 2-3 years old (7.9%) instead of the promised 40%;

    b. 29 of the 382 head of Cattle were 4 years old (7.6%) instead of the promised 40%;

    c. 75 of the 382 head of Cattle were 5-6 years old (19.6%) consistent with the 20% promised;

    d. Remaining 86 head of Cattle were 7 years or older, SS (short & solid), or died prior to January 9, 2023;

    e. 15 of the cows arrived open, meaning they had not been bred at all;

    f. 12 of the cows have calved and are sucking their calves;

    g. 3 cows bred in first stage, i.e. 1 to 3 months instead of the 7-9 months represented by Defendants;

    h. 33 cows bred in second stage, i.e. 4 to 6 months instead of the 7-9 months represented by Defendants;

    i. 148 cows bred in third stage, i.e. 7-9 months as represented; and

    j. Despite their age, the two-year-old cows were either SS (short & solid) or BM (broken mouth cows) instead of the "excellent condition" cows represented.

31. Plaintiff has attempted to mitigate the damage by providing veterinary care, ensilage, grass, and mineral and distillers grain ration of about 40 lbs. per day.

32. Plaintiff has further attempted to mitigate the damage by selling the Open (i.e. not bred by Defendants) that remained alive after two months of the feeding and veterinary care. The

sale included 27 weak and sick cows. This generated a total amount of $19,204.40 for an average of $711.27 per head.

32. Defendants sold these cows to Plaintiff as a part of the single heard (not Open) at a rate of between $1,150 and $1,550 per head less than two months before the sale.

33. Subsequent to paying Defendants, Kelly discovered Nick Mabray has been found liable in fraud in the sale of cattle to JATL Enterprises, LLC. Judgment was entered against Nick Mabray for $1,700,693.44. Later, the United States Bankruptcy Court for the Eastern District of Oklahoma, Case No. 20-81024 (Adversary No. 20-8018) determined the debt is non-dischargeable.

34. As a result of Defendants' actions and/or omissions Kelly has suffered damages, and continues to suffer damages, in excess of $75,000 exclusive of interest and costs.

## COUNT I – CONSPIRACY AND RICO LIABILITY

35. Kelly hereby re-alleges and incorporates by reference the allegations in paragraphs 1 through 34 above as though fully set forth herein.

36. Oleta Mabray and her son Nick Mabray engaged in a series of fraudulent and illegal conduct constituting an enterprise violative of RICO.

37. Specifically, Defendants engaged in a pattern of racketeering activity against Kelly that included, but is not limited to, several instances of wire fraud (18 U.S.C. § 1343), bank fraud (18 U.S.C. § 1344), and fraud under Oklahoma law.

38. Within ten years of its illegal conduct against Kelly, Nick Mabray engaged in the same type of illegal activity against a different victim (JALT Enterprises) as evidenced by the non-discharge finding in Case No. 20-81024 (Adversary No. 20-8018).

39. Defendants' conduct amounts to a "pattern of racketeering activity" as defined by 18 U.S.C. § 1661(5).

40. Defendants' conduct crossed state lines from Oklahoma into Kansas and therefor affects interstate commerce.

41. Defendants engaged in a conspiracy to violate RICO in their conduct of wire and bank fraud to which they are liable under 18 U.S.C. § 1962(d).

42. Kelly suffered damages proximately caused by Defendants' predicate acts of wire and bank fraud in an amount in excess of $75,000.

43. Specifically, Kelly suffered the loss of the funds paid to Defendants (minus any net amount he can recover from the sale of the Cattle as-is) and such loss was proximately caused by Defendants' criminal acts of wire and bank fraud.

44. Kelly is entitled treble damages and his costs and attorney fees pursuant to 18 U.S.C. § 1964(c).

WHEREFORE, Plaintiff prays for entry of Judgment against Defendants, jointly and severally, in such amount as the Court deems fair and reasonable, but in excess of $75,000, treble damages, for his costs and expenses incurred herein, and for such other and further relief as the Court deems just under the circumstances.

## **COUNT II – FRAUDULENT MISREPRESENTATION**

45. Kelly hereby re-alleges and incorporates by reference the allegations of paragraphs 1 through 44 above as though fully set forth herein.

46. Defendants affirmatively represented the Cattle were of a certain age, certain breed, contained within their ranch in Oklahoma, and free of disease.

47. These representations were material to the sale of the Cattle.

48. Defendants knew or should have known these representations were false.

49. Defendants made these representations with the intent to deceive Kelly.

50. Kelly justifiably relied on these representations in purchasing the Cattle from Defendants.

51. As a proximate result of the fraudulent misrepresentations, Kelly has suffered damages, and continues to suffer damages, in excess of $75,000.

52. Defendants' actions were willful and malicious, and as a result, an award of punitive damages against them is warranted.

WHEREFORE, Plaintiff prays for entry of Judgment against Defendants, jointly and severally, in such amount as the Court deems fair and reasonable, but in excess of $75,000, for his costs and expenses incurred herein, for punitive damages in an amount sufficient to punish the Defendants and deter them and others from similar conduct in the future, and for such other and further relief as the Court deems just under the circumstances.

## COUNT III – BREACH OF CONTRACT

53. Kelly hereby re-alleges and incorporates by reference the allegations of paragraphs 1 through 52 above as though fully set forth herein.

54. Based on Defendants' representations, the parties agreed Kelly would purchase from Defendants 74 Angus and Angus-cross pairs (cow and calf pairs) for the sum of $114,700.00; 88 first stage pregnancy Angus and Angus-cross cows for the sum of $101,200.00; and 220 Angus and Angus-cross bred cows for the sum of $275,000.00.

55. Although the purchase price was over $500.00 and not reduced to writing, the agreement is nevertheless enforceable despite the Statute of Frauds pursuant to 12A O.S. § 2-201(3)(c) because Defendants received and accepted Kelly's payment.

56. Defendants' representations are material terms of the agreement. These include, but are not limited to the breed, age, ability to breed, and health of the Cattle.

57. Defendants agreed to deliver the Cattle and accept the risk of the health of Cattle until delivery.

58. Defendants breached the agreement by, among other things, delivering Cattle that was not the represented breed, age, ability to breed, and health of the Cattle.

59. Defendants' representations amount to an express warranty under 12A O.S. § 2-313.

60. Defendants' representations amount to an implied warranty of merchantability and/or fitness for particular purpose as defined by 12A O.S. §§ 2-314 and 2-315.

61. Defendants' delivered Cattle that did not conform to the like and quality represented.

62. Kelly has the right to inspect the Cattle before acceptance even though payment was made before delivery. 12A O.S. §§ 2-512 and 2-513.

63. Kelly timely rejected the whole of delivery of the Cattle pursuant to 12A O.S. §§ 2-601 and 2-602.

64. Defendants breached the agreement by failing to return Kelly's payment of $502,850.00 upon the timely rejection of the Cattle.

65. Kelly is entitled to his attorney fees and costs in having to bring this action.

SPR 18127807.1

WHEREFORE, Plaintiff prays for Judgment against Defendants in such amount as the evidence determines, but in excess of $502,850.00, for his costs and expenses incurred herein, and for such other and further relief as the Court deems just in the circumstances.

## COUNT IV – UNJUST ENRICHMENT

66. Kelly realleges and incorporates by reference the allegations of paragraphs 1 through 65 above as though fully set forth herein.

67. Rather than delivering the Cattle Defendants described, Defendants delivered different cattle of substantially lower quality and having a substantially lower value.

68. It would be unjust under the circumstances to allow Oleta Mabray to retain the $502,850.00 which Kelly paid to her for the Cattle.

WHEREFORE, Plaintiff prays for Judgment against Oleta Mabray in the amount of $502,850.00, for his costs and expenses incurred herein, and for such further relief as the Court deems just under the circumstances.

Respectfully submitted,

s/George S. Freedman
George S. Freedman, OBA No. 15764
Spencer Fane LLP
9400 N. Broadway Extension, Suite 600
Oklahoma City, Oklahoma 73114
Telephone 405.844.9900
Facsimile  405.844.9958
gfreedman@spencerfane.com

SPR 18127807.1